Good morning, Your Honors, and may it please the Court, my name is Mark Ebert and I represent the petitioner and appellant, Mr. Richard Quilopras. I'd like to start with the issue of the trial court precluding Mr. Quilopras from offering any evidence that Murphy, the principal that Mr. Quilopras was allegedly aiding and abetting, was found not guilty in his own trial, and also precluding Mr. Quilopras from cross-examining Agin, the principal witness in both trials on that issue. Mr. Quilopras had the right to present exculpatory evidence relating to the credibility of the state's key witness, Agin, who was the only percipient witness and the only one to put who was able to put Mr. Quilopras as an aider and abetter and Mr. Murphy as the principal. What makes that evidence exculpatory? Because if he was not – because if – well, first of all, because the issue in both trials was whether Agin was credible, for all the many reasons that I could recite, but I – only if you ask. The jury in the prior case didn't offer – didn't offer any explanation for why it came back with a not guilty verdict. And in our country, we only offer two options, which is guilt and not guilty. There are some jurisdictions that offer a third, which is factually innocent. And the co-conspirator was not found factually innocent. He was found not guilty, which could be a failure of proof. So why would that fact be relevant in your client's trial? Actually, Your Honor, if it's a failure of proof, if it's insufficiency of the evidence, that is not – It may have been a botched prosecution case. Your Honor, we, as you say, in our system, assume that the jury followed the law, that it followed the court's instructions, that it's – that all of its decisions were rational. And in this case, basically the only evidence – the only issue was Agin's credibility. But, counsel, isn't the whole point of severing defendants for separate trials that one jury might disagree with the other and come to inconsistent conclusions? Isn't that the whole premise of severed trials? I think, yes, at least it could be. But in this case, we're kind of getting two issues involved here, both the collateral estoppel and the issue of precluding Mr. Quillipris from giving this evidence. But if you look at the Standifer case, the Standifer case does not overrule Swenson. In fact, it cites Swenson, Ashby Swenson, as a CF. In fact, if you look at Lexis, you'll see that Ashby Swenson hasn't been overruled. It's been questioned. Swenson's really a double jeopardy problem, though. Yes. You don't – you don't really have a double jeopardy problem. Could you have called the – could you have called the jurors in the prior cases witnesses? I don't know if they could have because I don't – What could they have testified to? Because I don't believe that the defense in this case tried to do that. Right. But what could they have possibly testified to? I don't think they would have called the jurors. I think what they wanted to do – I know. I know. I'm asking you a hypothetical. Could you have called the jurors to come in and testify that they believe that the witness in the prior case was or was not credible? I think that you could have offered that evidence, and I think that the trial court could have either allowed it or could have excluded it. Is there any jurisdiction in the United States that has ever allowed jurors in a prior case to come in and testify as to a verdict they rendered? I don't know because that wasn't an issue in this case. And why would the California court of appeals decision be clearly contrary to clearly established Supreme Court authority? Two reasons. One, again, I want to separate the two issues because really you're asking about both. One is that it prevented Mr. Quillipris from presenting exculpatory evidence that is relevant to the credibility of Agin, who is the only person who could have testified. But again, it's not primary evidence. It's secondary evidence. It's relevant evidence, and that's the test. If it's relevant to the defense, if it's exculpatory, if it goes to the defense But you haven't got any jurisdiction in the United States that has ever allowed this. You haven't got any case from any jurisdiction in any court where you can tell us where this has been permitted. Not that where they called the jurors. Again, I didn't look at that because that wasn't the issue in this case. But the prosecution, if Murphy had been convicted, the prosecution wouldn't be able to come in and introduce evidence. I'm sure they would have. I'm sure they would have. They wouldn't have been allowed to, would they? Are you saying that they would, that the prosecution would have been allowed to? Again, that wasn't the issue in this case, but I believe that they certainly would have tried. Is that a rule you would like us to adopt? What's that? Is that a rule you would like us to adopt? It isn't. I would certainly argue against it, but it wouldn't be on the kinds of constitutional grounds that I'm arguing in this case. Okay? It wouldn't be on the basis of not allowing exculpatory evidence on credibility. It would be extremely prejudicial. Yeah. And that's what I would argue, is that it's prejudicial. Okay. I'm still struggling with your statement that this evidence is relevant because a not guilty verdict can be for any reason. It can be purely jury nullification. It can be people saying, you know, I don't like the way the prosecutor dresses and he seems kind of like a sleazy guy and I want to send him a message. I mean, we don't have any idea what a not guilty verdict means. Actually, I have two responses to that. One is, again, as I said to Judge Bybee, that we assume that they follow the law. We assume that the jury makes rational decisions. We assume that it follows the judge's instructions. So if they did and they had a reasonable doubt, how does that help you? Because someone else had a reasonable doubt, therefore, I should have a reasonable doubt? Again, it's relevant evidence. It's also relevant not only to the credibility of Mr. Agin, but it's also relevant to whether or not there is a principle that Mr. Quillipris could have aided and abetted. And my second point is that, yeah, it could be that what you say is true. And, you know, if you assume that juries don't follow the law and the instructions. But in this case, that wasn't true, because the evidence was substantially similar. In fact, it was almost identical in the two cases, in the Murphy and Quillipris trial. Sotomayor You're not making the legal argument that because the principle was acquitted, therefore, there can be no crime here. If that were the law, then I would see the obvious relevance of it. But that is not your argument, as I take it. Carvin Well, that is one of my arguments in State court, because the – if you look at Standifer, and you have to decide which case applies, Ashby-Swenson or Standifer. Again, Ashby-Swenson was never overruled, even though Standifer cited it. But in the State court, if there had been nobody that he could have aided and abetted, he wouldn't have been convicted. Whereas in Standifer, that was a direct criminal appeal from a Federal criminal case. And in Standifer, the primary holding, as opposed to the dictum, my opponents always say that, so I think I can do it where it applies here. The primary holding was that there was a Federal statute, 18 U.S.C. Section 2, which explicitly said all aiders and bettors are principals, and the Supreme Court went through the history of that and decided that the purpose of writing that statute that way was to prevent the application of collateral estoppel in these kinds of cases. That was an issue that was never raised, never relied on by the State court of appeal, the district court, or the State. This was a State trial, not that. And also in Standifer, the Supreme Court said, look, we don't know what was decided at the first trial, not because the issues necessarily were different, but because at the first trial of the principal, there were inconsistent verdicts. It was found guilty on some, not guilty on others. Therefore, it was, as the Supreme Court said, muddled, what the first case was. Well, Standifer was, like this case, a prior trial of a different individual. Now, Ashby-Swenson is kind of everybody's favorite law school case, where the same person is tried again for having robbed different people, and they said, no, this is really the same crime, and it's the same person being charged. Now, isn't this clearly closer to Standifer than to Ash? No, because, again, I hate to beat this dead horse, but Ashby-Swenson wasn't overruled and no, but it's not this case. But what I'm saying is that Ashby-Swenson applies to both a mutual and non-mutual collateral estoppel, and the cite to that is where they say, if I can find it. Isn't Ashby-Swenson, though, really about what is the same crime for the same person? That is, if you rob a group, is that one crime or is that a group of crimes? Isn't that really all it's about? And yet Ashby – well, the facts of that case were that. But Ashby-Swenson says explicitly, and I can give the cite in a second if I can look at the case, it says explicitly that the rule of collateral estoppel is a constitutional – fundamental constitutional right under the Double Jeopardy Clause of the Fifth Amendment, and that the lack of mutuality doesn't change that. It says it explicitly. Well, yes, but that would – we would have – this would be Ash if Murphy were being tried again. I'm sorry? If Murphy were being tried again, he could – he could argue Ashby-Swenson. Actually, he could – he could argue. But he's – he's not going to do it. They can both argue it because Ashby-Swenson says it applies to both mutual and non-mutual, and it's not been overruled. What Standifer was a very different case. The question is not whether it's mutual or non-mutual. The question is which of these applies, and Ashby-Swenson applies to both. Well, actually, the question is narrower than that. The question is whether the State court was unreasonable in its determination that Standifer was more relevant than Ash. And so you have to convince us not only that they were wrong, but that they were unreasonably wrong. They were unreasonably wrong, and I don't want to keep – I don't want to repeat myself, and if Your Honors don't agree with me, then that's the case. But if Ashby-Swenson applies both to mutual and non-mutual, collateral estoppel, which it does, if it hasn't been overruled, and if Standifer is about whether or not a Federal statute, which was not at issue here, that was a direct criminal appeal, if it was about that and also about the so-called muddled results of the first trial, then it has nothing to do with this. It – yes, it's critical of collateral estoppel in general, but on grounds none of which apply in this case. There is no issue here that the evidence was different. There is no issue here that the government was unable to present evidence in the second case that it could have presented in the first case or vice versa. None of the issues that the Standifer court referred to, hypothetically, because, you know, in that particular case, none of those things occurred in this case. And that's my point. That's why Ashby-Swenson is applicable here and not Standifer, and it is unreasonable because the lower courts seem to think that Standifer overruled Ashby-Swenson when that is clearly not the case. If you shepherdize it on Lexis, you found that it's not overruled, and the only courts that have questioned it are two State courts, one in Maryland and I can't remember the other one, but not California. Sotomayor, you've also raised an issue with respect to the trial court's ruling that your client could be impeached by a prior conviction. Do you have anything to say about that? Yeah. The main thing I have to say about that is that the case that the courts below relied on in saying that he hadn't made his case on that was loose, which is the one that says you have to testify. If you want to preserve it. However, there are cases, one of which there are two cases, both Ninth Circuit, that I cited in my brief and reply brief that said if you make a record that you have to testify, you have to testify, you have to testify, you have to testify. And I think that's the case that Mr. Quillipris made a motion that he was being prevented from testifying by allowing the prosecution to testify. But Ninth Circuit opinions wouldn't be enough in an EDPA case, would they? No, but they are relevant to those Ninth Circuit opinions are based on Supreme Court law. And you're right, you're right. So what would be the Supreme Court authority? Okay. Just a second. I have it. Okay. Yeah, the two cases are U.S. v. Portillo and U.S. v. Hendershot. And the Supreme Court authority that they rely on is Rock v. Arkansas and Feretta v. California, which essentially establish the fundamental right to testify in your own defense. Counsel, you're down to a few seconds, but we've used a lot of your time with questions, so we'll give you a minute to rebut. Thank you. Thank you, Your Honor. We will hear from Mr. Dodge. Good morning, Your Honors, and may it please the Court. Leif Dodge from the California Attorney General's Office. Petitioners raised five claims, none of which are supported by clearly established U.S. Supreme Court authority, which this Court has recognized is the proper standard under highly deferential review under AEDPA, whereby a habeas grant is not warranted unless the State court's decision, the last reason State court decision here, the California Court of Appeals decision, was contrary to or involved in unreasonable application of clearly established U.S. Supreme Court authority. With regard to his first claim, that his prosecution should have been barred by the application of the doctrine of non-mutual collateral estoppel, not only is there no clearly established high court authority on the matter, when the Supreme Court addressed the issue, they squarely foreclosed and rejected Petitioner's claim here. And that was the Standefer case that the Court referenced earlier. And in that case, the procedural posture of it was nearly identical to this case here.  The principal was an IRS tax agent who was tried first, was acquitted, and then a subsequent prosecution was brought under an aiding and abetting theory of liability against Standefer, the defendant. He moved to dismiss the indictment. That was denied. The Court of Appeal affirmed his conviction, and the U.S. Supreme Court addressed, not in dictum, but addressed the actual constitutional right asserted by Petitioner here, which is that there is a constitutional right to non-mutual collateral estoppel in criminal cases, and the U.S. Supreme Court rejected that. So not only has Petitioner not carried his burden of showing that there is U.S. Supreme Court authority supporting his claim, there is actually a Supreme Court authority directly foreclosing that claim. I think the discussion of Ash as opposed to Standefer has been sufficient up to this point, so I don't think I need to dive deeper into that, other than to say that Ash is a double jeopardy case, there were double jeopardy concerns involved there because it was the same defendant, and there was an attempt to prosecute the same defendant for the same crime in a second case. Those concerns clearly are not at issue here. But if I can move to the first claim that Appellant Counsel brought up here, and that's the kind of a union of two claims, which is there should have been reference allowed to the acquittal in Murphy's trial, and Agin should not have been permitted to testify, both of which are kind of your classic discretionary determination by a trial court judge, which is entitled to deference under AEDPA. They were valid state law evidentiary rules. There's no claim that California's rules of evidence here, as applied by the trial court, are unconstitutional. And that discretionary determination is particularly one that should be given reference here, too, because there was different evidence presented at the two trials. There were five witnesses who testified at Murphy's trial who did not testify at Petitioner's trial. There were another seven witnesses who testified at Petitioner's trial that did not testify at Murphy's trial. And perhaps most importantly, there were no limitations placed on the type of cross-examination that defense counsel could conduct. They were, with regard to Agin, who was the prime prosecution witness, defense counsel was permitted to cross-examine Agin with regard to the terms of his plea deal, his criminal history, alcohol and drug abuse around the time of the offense. And he was even allowed to reference, defense counsel was allowed to reference Agin's testimony at Murphy's trial. They couldn't bring in the acquittal itself, but they were able to reference his testimony there. And so because these were different trials, there's no rule of non-mutual collateral estoppel that applies in criminal cases, and the trial court made a valid discretionary determination balancing the relevant factors, any minimal relevance of this evidence against the undue prejudice, which I think it's worth noting there could have been significant undue prejudice involved here by admitting evidence of Murphy's acquittal and preventing Agin from testifying. And that is the only potential use that the – that evidence of Murphy's acquittal could serve would have been to ask Petitioner's jury to advocate its own responsibility to independently and objectively evaluate the evidence in its case, advocate that responsibility and instead rely on a credibility or guilt determination by another jury in another case. And I think as this Court properly pointed out, that's never been the rule. It's never been, as far as we are aware, we've never seen admission of an acquittal by another jury in another criminal matter as substantive evidence or as relevant evidence in a separate criminal proceeding of a different defendant. And so for those reasons and for the reasons laid out in our briefing, unless this Court's decision be affirmed and the habeas petition be denied. I don't believe we have further questions. Thank you, counsel. Thank you. Mr. Abert, you may have some rebuttal. I have three points to make in one minute, so I'm going to try and be quick. The first is that the Swenson, Ashby-Swenson decision is still being applied long after standoffer was decided, and I cite Yeager versus, I think, United States, a U.S. Supreme Court case from 2009, and this Court's decision in 2007 of Castillo versus U.S. versus Castillo-Basso. Second point is that there was, in fact, a limitation on defense counsel's ability to cross-examine Agin at trial.  He wasn't allowed to discuss the effect of that on his credibility, and he wasn't allowed to cross-examine, I should say cross-examine, him on whether there was, in fact, an aider or an ab-excuse me, a principal who could have been aided and abetted after that first trial. And my third last point is that the question is not whether the jurors could testify. That's not the issue here. The issue is whether it meets the three-pronged test that this Court said described in a case I cited in the brief, that is, whether the two issues in the two trials were sufficiently similar to invoke collateral estoppel, whether that issue was fully litigated, and whether it was necessarily decided. And since the issue in both cases, the primary and really the only issue, was the one that said that Mr. Murphy was a principal, the only person who said that Mr. Quillipris was an aider and abetter, the only recipient witness, and that was the issue at both trials, so the three-part test is met. Thank you, counsel. The case just argued is submitted, and we appreciate very helpful arguments from both counsel.
judges: SCHROEDER, GRABER, BYBEE